## In re McBRYDE.

(District Court, E. D. North Carolina. December 4, 1899.)

1. BANKRUPTCY—CONTEMPT OF COURT—THREATENED LEVY.

A mere threat by a judgment creditor of a bankrupt to levy execution on his property, pending the bankruptcy proceedings, does not constitute a contempt of the court of bankruptcy or its process, where there has been no actual levy made on such property, nor any interference with it by the creditor after the adjudication in bankruptcy.

2. SAME—HOMESTEAD EXEMPTION—REVALUATION.

Where a trustee in bankruptcy, in setting off to the bankrupt the property claimed as his homestead, has adopted the value placed upon it by appraisers 15 years before, when it was allotted to the bankrupt as a homestead under process of a state court, but it appears that the property has since increased in value beyond the amount allowed as exempt by the laws of the state, the court of bankruptcy will direct the trustee to revalue the property, and set apart to the bankrupt so much thereof as shall not exceed in value the amount so allowed.

3. SAME—DISCHARGE OF BANKRUPT—POSTPONEMENT.

Action will be suspended upon the bankrupt's application for discharge until such reallotment of the homestead has been made by the trustee.

4. SAME—PROVABLE DEBT—JUDGMENT.

Where a creditor holding a valid and provable debt against a bankrupt at the date of the adjudication thereafter brings suit in a state court and recovers judgment, he may prove such judgment as an unsecured claim against the bankrupt's estate, "less costs incurred and interest accrued after the filing of the petition and up to the time of the entry of such judgment," as provided in Bankr. Act 1898, § 63a, subd. 5.

5. SAME—SUITS AGAINST BANKRUPT—EFFECT OF JUDGMENT.

A creditor holding a promissory note, valid and enforceable against the maker at the date of the latter's adjudication in bankruptcy, but against which the statute of limitations has nearly run, may reduce the same to judgment by suit brought in a state court after such adjudication; and such judgment will establish the claim and stop the running of the statute, though it will not give the creditor a lien or priority, nor entitle him to levy on the bankrupt's property.

6. SAME—OBJECTIONS TO DISCHARGE—FALSE OATH.

A bankrupt's application for discharge will not be denied, on the ground of his having concealed property or made a false oath in bankruptcy, where it appears that he listed all his property in his schedules, and affixed thereto the valuation placed upon his real estate by appraisers who valued it several years before under process of a state court, although such value may actually be much below the present market value of the property.

In Bankruptcy. On review of decision of referee in bankruptcy.

## The referee reported as follows:

The undersigned, referee in bankruptcy, respectfully reports: At Fayetteville, in said district, at a creditors' meeting called to consider bankrupt's application for discharge (present, D. E. McBryde, bankrupt, and his attorney, B. F. McLean, Esq., and the Navassa Guano Company, a judgment creditor, and John Leach, creditors whose claims have been filed and allowed, by their attorney, John H. Cook, Esq.), the following proceedings were had: John Leach, by his attorney, offered to file proof of claim for fifty five and $^{41}/_{100}$ dollars; the same being based upon a judgment rendered in a suit instituted in state court, which was begun after the adjudication that McBryde is a bankrupt. Objected to by the bankrupt. Objection sustained, and creditor, Leach, excepted. Upon an intimation of the referee, Leach then struck out all that part of his proof of claim which referred to the said judgment, treating the said judgment as a nullity, and again offered to file his proof of claim. The bankrupt again objected, for the reason that the same was barred by the three-years statute of limitations. The referee finds the following agreed facts: The said proof of claim is based upon a promissory note which fell due less than three years prior to the institution of the bankruptcy proceedings, and less than three years before the adjudication in bankruptcy, but more than three years prior to this date (November 15, 1899), when it is filed. The referee overruled the objection and filed the claim, and the bankrupt excepted. John H. Cook, Esq., attorney as aforesaid, filed a petition praying the reallotment of bankrupt's homestead, accompanied by the affidavits of three disinterested freeholders in Robeson county, where the said homestead lies, setting forth that in their opinion the homestead (which was laid off about 15 years ago) has increased in value more than 50% since last allotment. The referee held a reallotment should be granted upon the strict compliance, as far as may be, with the requirements of chapter 149, Laws N. C. 1893, entitled "An act to provide for the reallotment of homesteads;" that this act, and all other laws of North Carolina relating to the homesteads, by section 6 of the bankruptcy act are made a part of the national bankruptcy law. To this ruling the bankrupt excepted. The said John H. Cook, Esq., attorney as aforesaid, gave notice of his objection to the granting of the discharge to D. E. McBryde, bankrupt, until the question of the reallotment of the homestead can be passed upon by the judge. The referee recommends that the discharge be held up until the homestead question be decided; for, if the discharge be granted, the bankruptcy court would have no jurisdiction to reallot the homestead if it is determined that such a course is legal. And Cook, attorney, objects to the granting of the discharge for the reason that the bankrupt has knowingly scheduled his real estate at far below its real value. As it appears that the bankrupt adopted the valuation placed upon his real estate by the appraisers who laid off his homestead in the state court about 15 years ago, the referee is of the opinion that this does not constitute a valid objection to the granting of the discharge. It is not contended that bankrupt failed to list any of his property. It is therefore recommended by the referee that the discharge be granted as soon as the homestead can be reallotted, if it is decided it should be reallotted. Petitions setting forth matters which the judge is asked to review are herewith attached. Petition by B. F. McLean, Esq., attorney for the bankrupt, is marked "Exhibit A," and the petition of John H. Cook, Esq., attorney for creditors, is attached, and marked "Exhibit B." The report of trustee as to property set apart as exemptions is also attached, and marked "Exhibit C." Proof of conformity and record in the matter is also herewith sent, with blank certificate of discharge in duplicate.

Respectfully submitted,      S. H. MacRae, Referee in Bankruptcy.

B. F. McLean, for bankrupt.
John H. Cook, for creditors.

PURNELL, District Judge. This cause coming on to be heard this, the 4th day of December, 1899, and being heard, after argument by counsel, it is ordered and adjudged:

1. That there having been no levy on the property of the bankrupt

by the sheriff, George B. McCleod, or his deputy, W. F. Henderson, or John Leach, nor any interference with said property after the adjudication in bankruptcy, but simply a threat to levy, said George B. McCleod, W. F. Henderson, and John Leach have not been guilty of a contempt of this court or its process.

2. That the homestead of the bankrupt, laid off some years ago under process of the state court, having enhanced in value beyond that allowed by and under the law of North Carolina, be reallotted by the trustee, as provided by the act of July 1, 1898, § 47, subsec. 11, allowing said bankrupt real estate of the value of $1,000 and no more.

3. That the costs incurred in consequence of the contempt proceedings be paid by the trustee out of the estate; said costs to be taxed by the clerk of this court.

4. D. E. McBryde is entitled to a discharge in bankruptcy when the homestead is reallotted, and the granting of the same is deferred for this purpose. The former order in the contempt proceedings, requiring the sheriff, his deputy, and Leach to show cause, is modified in accordance herewith, and this cause retained for further order.

Subsequently (December 28, 1899) the following opinion was rendered by the court:

PURNELL, District Judge. On the exceptions to the rulings of the referee certified for review, it is held, adjudged, and ordered:

That the first exception be, and the same is, sustained. While a judgment in a state court after or within four months of an adjudication creates no lien and confers no additional rights, the statute recognizes two classes of judgment debts which may be proved: First, a debt evidenced by judgment obtained prior to the commencement of bankruptcy proceedings (section 63a, subd. 1); and, second, a debt founded on a provable debt reduced to judgment pending bankruptcy proceedings (Id. 5). The latter class of debts are provable, "less costs incurred and interest accrued after the filing of the petition and up to the time of the entry of such judgment." This is not a new debt created during bankruptcy, but retains the character of the indebtedness out of which it arose. Boynton v. Ball, 121 U. S. 457, 7 Sup. Ct. 981, 30 L. Ed. 985. And the conflict of opinion which arose under the act of 1867 on the question of merger could not arise under the act of 1898, even if the supreme court had not settled it in the decision cited; for the act expressly provides for the proving of such debts in the sections quoted. The purpose of the act seems to be to meet cases like the one at bar. At the time the petition in bankruptcy was, filed, John Leach held a note signed by McBryde, not under seal. It was not then barred. October 1, 1899, one day before barred by the state statute, he obtained judgment. This established the debt, and stopped the running of the statute of limitations. The filing of the petition might have done this, but the creditor was vigilant, and not willing to trust to a theory when there was a way certain. He obtained a judgment, as he had a legal right to do. which, as to his debt, gave him all the rights under the state law,—established his debt, stopped the running of the statute,—except the right to inter-

fere with the bankruptcy proceedings by a levy, or to establish a priority. The debt is provable as other unsecured debts are provable.

Second exception is overruled. The discharge of the bankrupt is provided for in section 14a, and none of the reasons for refusing such discharge are shown or alleged. Section 14b. It appearing, however, that the homestead allotment made several years ago under process of a state court was adopted by the trustee, and the same has been enhanced in value in excess of that allowed by the laws of North Carolina, the discharge will not be granted until there is a reallotment of the homestead exemptions, and the bankrupt has otherwise fully complied with the provisions of the statute. This ruling disposes of the third exception. Except as herein modified, the report and rulings of the referee are affirmed.