272 F.2d 618
 D. C. COLEMAN, Sr., As Trustee of Florida-Carolina Lumber
Company, Bankrupt, Appellant,
v.
Chales ALCOCK, P. J. Davis, Clarence E. Hood, Jr.,
Individually and As Officers and Directors of Florida
Carolina Lumber Company and Southern Creosoted Lumber Co.,
Inc., Southern Creosoted Lumber Co., et al., Appellees.
 No. 17662.
 United States Court of Appeals Fifth Circuit.
 Dec. 4, 1959, Rehearing Denied Jan. 5, 1960.
 
 H. I. Fischbach, Fischbach & Lurie, Miami, Fla., for appellant.
 Harold Friedman, William B. Roman, Miami, Fla., Seymour B. Liebman, Fred R. Baisden, Thomas H. Barkdull, Jr., Miami Beach, for appellees.
 Aaron M. Kanner, Miami, Fla., for P. J. Davis.
 Sibley, Grusmark, Barkdull & King, Miami Beach, Fla., for Alcock and Hood.
 Copeland, Therrel, Baisden & Peterson, Miami Beach, Fla., for Miami Beach First Nat. Bank.
 Feibelman & Friedman, Miami, Fla., for Leo Robinson, Dania Bank and Southern Creosoted Lumber Co.
 Before RIVERS, Chief Judge, and TUTTLE and BROWN, Circuit Judges.
 JOHN R. BROWN, Circuit Judge.
 
 
 1
 This case presents the question whether a Trustee in Bankruptcy seeking pursuant to Section 70, sub. e[1] to set aside transfers in fraud of creditors under Florida state laws is foreclosed by res judicata by reason of a prior state court judgment[2] brought by a judgment creditor against the Bankrupt and those participating in the suspected transfers. The District Court on the basis of the Trustee's complaint and the record[3] of the State Court proceeding entered summary judgment in favor of the defendants and against the Trustee.
 
 
 2
 The Trustee's federal court complaint can be quickly capsulated. The Bankrupt is the Florida Carolina Lumber Company, a corporation. The individual defendants, Alcock, Davis and Hood were officers and directors of Florida Carolina. They were also officers and directors of Southern Creosoted Lumber Company, a corporation, claimed to be a wholly owned subsidiary of the Bankrupt Florida Carolina. On June 28, 1956, while Florida Carolina was insolvent,[4] the three individuals, Alcock, Davis and Hood, as officers of Southern Creosoted executed a mortgage on all of the assets of Soutern Creosoted to secure the obligations of Florida Carolina (the Bankrupt) to the three defendant Miami banks. At the same time these individuals executed a voting trust transferring all voting rights of Southern Creosoted to the defendant voting-liquidating Trustees. These transfers were made without consideration to Florida Carolina for the purpose and with the intent of giving preference to the individual officers and stockholders who were endorsers on the corporation's notes. The receipt, appropriation and application of moneys and properties belonging to Southern Creosoted in partial liquidation of the obligations of Florida Carolina and its officers to the defendant Banks to the exclusion of other creditors violated Section 608.55, Florida Statutes, F.S.A., prohibiting transfers of corporate assets after or in contemplation of insolvency.
 
 
 3
 The Trustees' complaint sought this relief: (a) the stock of Southern Creosoted be declared to be property of the Bankrupt and surrendered; (2) the voting trust be set aside, (3) the mortgage given the Banks on Southern Creosoted's property be set aside, and (4) the assignment of the stock to one of the Banks (Miami Beach) be set aside.
 
 
 4
 The state court proceedings held to be res judicata can likewise be swiftly summarized. Central Bank and Trust Company, the holder of an unsatisfied common law judgment against Florida Carolina (and Davis and his wife as guarantors), filed in the Florida state court a bill in equity contending that the transactions between Florida Carolina, Southern Creosoted and the three individual owners of all of the stock in each of the two corporations constituted a fraud against its right as a creditor. 'The complaint prayed that all of the voting trust agreements be set aside, that Southern Creosoted be declared a wholly owned subsidiary of Florida Carolina and that the assets of these corporations be made available at least pro tanto to the liquidation of (Central Bank and Trust Company) judgment.' Central Bank & Trust Co. v. Davis, supra, 102 So.2d at page 602.
 
 
 5
 The defendants moved for summary judgment supporting their motions with various depositions and affidavits. 'The sum of the depositions and affidavits was simply that Southern Creosoted was a perfectly solvent corporation, that it was not a wholly owned subsidiary of Florida Carolina, that the voting trust agreements were made in good faith * * *.' Central Bank & Trust Co. v. Davis, supra, 102 So.2d at page 602. Central Bank and Trust Company filed no counter affidavits whatsoever and relied wholly on its verified complaint to establish a genuine factual issue.
 
 
 6
 The Supreme Court of Florida affirmed summary judgment in favor of the defendants and against the judgment creditor. On the merits it held that transfers were not fraudulent under Section 726.01, F.S.A. or prohibited under Section 608.55 (formerly Section 612.45) covering transfer of assets by a corporation after or in contemplation of insolvency.
 
 
 7
 The Court also held that there was no showing whatsoever-- and hence no genuine issue preventing summary judgment-- that Southern Creosoted was owned or controlled by Florida Carolina. This conclusion was based on two grounds, both procedural. The first, indigenous to the Florida common law approach to pleadings, was that since the complaint showed on its face that 'all of the stock in Southern Creosoted was owned individually' the complaint 'itself excluded the possibility of establishing this aspect to the (judgment creditor's) position.'[5] The second was that while for summary judgment a verified pleading may serve as a counter affidavit to create an issue of fact, the facts in the pleadings have to be in the form satisfying Rule 1.36(e), Florida Rules of Civil Procedure, 30 F.S.A. This the Court states, requires 'that the affidavit be made on personal knowledge and shall set forth facts admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matter stated in the affidavit.'[6]
 
 
 8
 To escape the threat of res judicata, the Trustee makes much of two things to distinguish his case from the prior litigation. First, that in the federal court suit mention is made only of Section 608.55, F.S.A., and not 726.01. Second, that his complaint categorically charges that Southern Creosoted is a wholly owned subsidiary of Florida Carolina, an assertion which the Florida Supreme Court merely declared had not been proved. We regard these as not too important. For if, as appellees contend and the District Court held, the prior judgment was binding because the Trustee was in privity with the Bankrupt (Florida Carolina), a defendant in the state court proceeding, the normal rule would be applicable to foreclose not only matters which were, but those which might have been, litigated. Restatement, Judgment 47, 48, 68 Comment a (1942). And if looked upon as collateral estoppel, the status of Southern Creosoted was actually presented and determined adversely since the opinion shows that the Florida Supreme Court regarded that both Sections 726.01 and 608.55 were involved.
 
 
 9
 But disregarding these sugguested distinctions as unimportant, we are of the view that the Trustee is not bound, either on res judicata or judicial collateral estoppel, by the prior state court proceedings. The Trustee is, of course, a successor of the Bankrupt for many purposes. But he is much more both in the extraordinary rights with which the Bankruptcy Act invests him, and as a general respresentative of the creditors. Unless he intervenes and takes on the role of an active litigant subjecting himself thereby to the usual incidents of such action,[7] he is not bound by the judgment merely because the Bankrupt was a party defendant in the prior litigation. Only in a limited situation will the Trustee be foreclosed. This will not include a mere in personam proceeding for if, as we have said in Rhodes v. Elliston, 5 Cir., 1928, 29 F.2d 737, 738, 'The judgment was a personal one against the bankrupt,' then, 'it was not binding on the bankrupt estate, because the trustee was not made a party defendant.' 1 Collier, Bankruptcy 1171-73 (14th Ed. 1956). Only if it is the Bankrupt's property as such does the judgment operate as a bar. '* * * If the bankrupt's property is involved the trustee will be bound by the judgment to the same extent as any other person who succeeds to an interest in property pending litigation.' 1 Collier, supra at 1170. The question of title or ownership of property must be presented and to be binding the prior proceedings must have been in rem or quasi in rem. See Clark v. Mutual Lumber Co., 5 Cir., 1953, 206 F.2d 643; Stark v. Baltimore Soda Fountain Mfg. Co., D.C.Md.1952,101 F.Supp. 842, 845; Detroit Trust Co. v. Schantz, D.C.E.D.Mich.1926, 14 F.2d 225; cf. First National Bank v. Lake, 4 Cir., 1952, 199 F.2d 524, certiorari denied, 1953, 344 U.S. 914, 73 S.Ct. 337, 97 L.Ed. 705.
 
 
 10
 The fact that the Trustee did not intervene is of no real moment.[8] If it is a suit involving title to property, the Trustee is bound whether he intervenes or not. Theoretically it might be though that this suggests that the Trustee had a duty to intervene. But the consequence flows from the nature of the proceeding (in rem or quasi in rem), not the failure of the Trustee to take action. Linstroth Wagon Co. v. Ballew, 5 Cir., 1907, 149 F. 960, 8 L.R.A.,N.S., 1204; In re Goetz, D.C.Ariz.1923, 289 F. 118; In re Winter, D.C.E.D.Mich.1927, 17 F.2d 153. See 1 Collier, supra at 1166, 1170. If, as we hold, the Trustee is not in privity with the Bankrupt, he certainly was not with respect to the judgment certainly was not with Bank and Trust Company. Hall v. Main, D.C.Ill.1929, 34 F.2d 528, affirmed Main v. Hall, 7 Cir., 1930, 41 F.2d 715. See 1 Collier, supra 1170.
 
 
 11
 None of the collateral contentions suggested by the appellees' brief or on oral argument is availing. Tested in the light of the controlling principles, the complaint was certainly sufficient to state a claim upon which relief could be granted. Millet v. Godchaux Sugars, 5 Cir., 1957, 241 F.2d 264; Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690. The Trustee did not have to allege the specific name or identity of some creditor meeting the requirements of Section 70, sub. e(1). Mitchell v. E-Z Way Towers, 5 Cir., 1959, 269 F.2d 126.
 
 
 12
 Both Section 608.55 and 726.01 are open to the Trustee if he can make the requisite proof on the underlying substantive elements of fraud or preferential payment during insolvency and the existence of some one actual creditor who (a) has a provable claim and (b) is within the class of creditors protected under these Florida statutes.
 
 
 13
 $9, 10) Contrary to the contentions of the appellees and their supplemental brief requested by the Court, this latter element (b) does not require that the actual existing creditor be one having the status of a judgment creditor. In Florida Fuit Canners v. Walker, 5 Cir., 1937, 90 F.2d 753, this Court with no suggestion of any judgment creditor limitation recognized the Trustee's right, derivative from creditors, to set aside fraudulent transactions under Section 726.01. And Judge Sibley commenting on the 'verbosity' of the ancient language of this Section adapted from the English Statute of Elizabeth In Beall v. Pinckney, 5 Cir., 1945,150 F.2d 467, 469, 161 A.L.R. 1281, pointed out the broad reach of its terms. Stripped down it reads: 'Every feoffment * * * transfer and assignment * * * by writing or otherwise * * * made or executed, contrived or devised of fraud, covin, collusion or guile, to the end, purpose or intend to delay, hinder or defraud creditors or others of their just and lawful actions, suits, debts * * * shall be from henceforth as against the person or persons * * * so intended to be delayed, hindered or defrauded, deemed, held, adjudged and taken to be utterly void, frustrate and of none effect * * *.' The beneficiaries are widely defined. 'A 'creditor,' within the meaning and intent of the statute * * * is * * * (anyone who) has a legal claim or demand of a contractual nature in existence * * * when an alleged fraudulent conveyance is made * * *.' Weathersbee v. Dekle, 1933, 107 Fla. 517, 145 So. 198, 200. It has been so broadly construed as to encompass within its protection 'one who claims damages for tort or otherwise.' Foster v. Thornton, 1936, 125 Fla. 829, 170 So. 598, 601.
 
 
 14
 It is true that under the carefully preserved cleavage of law and equity in Florida, there are procedural rules for the assertion of rights under Section 726.01 which we may assume apply as well to Section 608.55. Before a creditor's bill to satisfy indebtedness can be filed (either to reach an equitable title or to remove a threatened cloud on a legal title in the judgment debtor), a suit at law must first be filed and no final equity decree will enter until final judgment in the law action. Section 62.37, F.S. A Whether execution must then be issued and returned nulla bona depends on the nature of the original title in the judgment debtor. George E. Sebring Co. v. O'Rourke, 1931, 101 Fla. 885, 134 So. 556; Stelle v. Dennis, 1932, 104 Fla. 384, 140 So. 194.
 
 
 15
 But there is nothing in any of the Florida jurisprudence to suggest that the ancient words describing those to be protected against 'fraud, covin, collusion or guile' as 'the person or persons, or bodies, politic or corporate, his, her, or their successors, executors, administrators and assigns, and everyone of them so intended to be delayed, hindered or defrauded * * *' is to be confined by judicial construction to only those who hold a judgment.
 
 
 16
 The distinction between the procedural prerequisite to enforcement and the substantive class of persons within the protection of anti-fraud statutes is vital. It is recognized, of course, that '70e does not create in the bankruptcy trustee any independent right or power of action with which to challenge an allegedly invalid transfer.' 4 Collier, supra at 1475. And though it may be true that in Collier's now famous allusion that when pursuing Section 70, sub. e, rights the Trustee 'like Prometheus bound * * * is chained to the rights of creditors in the bankruptcy proceeding,'[9] Section 70, sub. c, completes the figure to supply a Hercules to unleash the bands so far as procedural status in concerned. Collier goes on to point out that under Section 70, sub. c, the trustee as to 'all other property' the trustee 'has the status of a judgment creditor holding an execution returned unsatisfied.'[10] The result is that the 'Courts have determined that although the trustee under 70e asserts the rights of creditors, he does so in his capacity as trustee, and hence is endowed with whatever additional status the Act confers upon him in that capacity.' Concerning the procedural problem of the kind presented here the text then concludes 'Thus any basis for the procedural contention that the creditor represented must have reduced his claim to judgment is swept away.'[11]
 
 
 17
 The contention then that the state court proceeding should effectively bar the Trustee since he would be able to find no judgment creditor having rights other than the unsuccessful plaintiff Central Bank and Trust Company is not significant. On the contrary, the lack of any such procedural prerequisite and the fact that any recoveries would be for all of the creditors, not just the one creditor satisfying Section 70, sub. e, 4 Collier 1526-1537, is persuasive that res judicata from pre-bankruptcy private litigation between the Bankrupt and one creditor should be carefully circumscribed.
 
 
 18
 Res judicata or collateral estoppel is neither a bar nor a defense. The complaint states a claim and the cause must be remanded for trial or other consistent proceedings on the merits. Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690, 693.
 
 
 19
 Reversed and remanded.
 
 
 
 [1]
 '(1) A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor
 '(2) All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer and shall pass to, and every such transfer or obligation shall be avoided by, the trustee for the benefit of the estate. * * *.' Bankruptcy Act, 70, sub. e (1) & (2), 11 U.S.C.A. 110, sub. e (1) & (2).
 
 
 [2]
 Central Bank & Trust Co. v. Davis, Fla.1958, 102 So.2d 600. See subsequent companion case, southern Creosoted Lumber Co. v. Morales, Fla.App.1959, 113 So.2d 425
 
 
 [3]
 This comprised only the following from the Florida state court proceeding: the judgment creditor's complaint, the answers of all defendants, the motions for summary judgment, the trial court's findings and summary judgment, the appeal and the final opinion of the Florida Supreme Court in Central Bank & Trust Co. v. Davis, Fla.1958, 102 So.2d 600
 
 
 [4]
 The involuntary petition against Florida Carolina was not filed until March 22, 1957; there was an interim receiver. On November 27, 1957, the Trustee was elected and qualified
 
 
 [5]
 Central Bank & Trust Co. v. Davis, Fla.1958, 102 So.2d 600, 603
 
 
 [6]
 Ibid
 
 
 [7]
 1 Collier, supra at 1169
 
 
 [8]
 The judgment creditor's bill of Central Bank and Trust Company was dismissed on summary judgment January 11, 1957, prior to the bankruptcy proceeding which commenced March 22, 1957. The Trustee was appointed November 27, 1957. The Supreme Court of Florida decision was dated April 23, 1958 and rehearing denied May 28, 1958
 
 
 [9]
 4 Collier, supra at 1475
 
 
 [10]
 Id. at 1477. See Hummel v. Harrington, 1926, 92 Fla. 87, 109 So. 320, 330
 
 
 [11]
 4 Collier, supra, 1477. By footnote 20 the text is careful to point out that this relates to procedural requirements and 'should not be confused with another proposition. Thus, if, under state law, only creditors who have obtained judgments are within the class against whom the transfer is invalid * * *, then the trustee must under 70e assert the rights of the judgment creditor who obtained his judgment during the (requisite) period.'